**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SAMUEL, SON & CO. INC., | 3:09-cv-00291-RAM |
| Plaintiff, | |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| SIERRA STAINLESS, INC., | |
| Defendant. | |

Before the court is Plaintiff Samuel, Son & Co. Inc.'s (Samuel) Motion for Summary Judgment. (Doc. #20-22.)[1] Defendant Sierra Stainless, Inc. (Sierra) opposed (Doc. #23) and Samuel replied (Doc. #24). Having considered the papers and the arguments presented therein, and with good cause appearing, the court grants Samuel's motion.

## I. BACKGROUND

This action arises from the alleged non-payment of a debt in connection with the sale of metal goods by Plaintiff Samuel, Son & Co. Inc. (Samuel) to Defendant Sierra Stainless, Inc. (Sierra). (Amend. Compl. (Doc. #5) 19-22, Mot. for Summ. J. (Doc. #20) 4.)

On or about March 1, 2007, the Third Judicial District Court of the State of Nevada appointed a receiver, Stephen Rye, Esq. ("Rye"), over Sierra's assets in connection with litigation between Sierra's owners, Vincent Frere (Frere) and Daniel Neisingh (Neisingh). (Doc. #20 Ex. 3 at 6:15-25, 8:4-25.) Rye was discharged as receiver by order dated October 13, 2008. (Doc. #20 Ex. 4.)

---

[1] Refers to court's docket number.

On or about August 6, 2007, Sierra executed and submitted a credit application to Samuel which included general terms for any sale of goods made by Samuel to Sierra. (Doc. #20 5, Doc. #22 Ex. A to Ex. A.) The credit application provides in pertinent part:

> I understand that any and all purchases made are due and payable thirty (30) days from date of invoice...I hereby agree to pay all invoices in accordance with the terms stated above and, further, to pay finance charges of one percent (1%) per month (annual percentage rate of 12%), or such other rate as may be set by you from time to time, on all balances remaining unpaid thirty (30) days from invoice date...
>
> In the event of default, I further agree that should it become necessary to place this account for collection, I shall be responsible for all costs of collection including, but not limited to, Attorney fees...

(Doc. #22 Ex. A to Ex. A.)

Sierra sent Samuel certain purchase orders[2] in response to which Samuel sent invoices[3] which are the subject of this action. The purchase orders and invoices span the time period of August 11, 2008 and December 31, 2008. (Doc. #22 Ex. A 3-19, Ex. B-P thereto.) Samuel's sales agreement is set forth on the reverse side of each invoice and contains the following pertinent provisions:

> 3. PRICE; PAYMENT; DEFAULT
> ...
> Payment of the selling price and additional costs for goods sold hereunder is due within 30 days after the date of issuance of the invoice therefore.
> ...
> Buyer shall be in default hereunder in the event that it shall default in fulfilling any of its obligations to Seller...In the event of such default, all unpaid amounts shall at Seller's option become immediately due and payable...All costs incurred by

---

[2] The purchase orders relevant to this action are identified by the following numbers: 1664, 1678, 1682, 1685, 1675, 1700, 1692, 1694, 1708, 1722, 1731, 1734, 1741, 1742, and 1749. (Doc. # 22 Ex. B-1, C-1, D-1, E-1, F-1, G-1, H-1, I-1, J-1, K-1, L-1, M-1, N-1, O-1, and P-1 to Ex. A.)

[3] The invoice numbers relevant to this action are: 1779855, 1781317, 1781940, 1782593, 1787909, 1783809, 1785737, 1787899, 1785113, 1792326, 1793107, 11793693, 1793700, 1794231, 1795777, 1794958, 1805439, 1805443, 1805793, 1805799, 1807844, 1806374, 1806742, 1808685, 1810147, 1814053, 1815317, and 1825209. (Doc. # 22 Ex. B-2, C-2, C-3, D-2, D-3, E-2, E-3, E-4, F-2, G-2, H-2, H-3, I-2, I-3, I-4, J-2, K-2, K-3, K-4, K-5, K-6, L-2, L-3, M-2, M-3, N-2, O-2, and P-2 to Ex. A.)

2

>Seller as a result of non-payment or delay in payment by Buyer, including without limitation collection costs and reasonable attorney's fees, shall be paid by buyer.
>...
>10.  FINANCE CHARGE/PENALTIES
>Terms and conditions specify that finance charge at a rate of 1 1/2% per month or 18% annum applies to delinquent balances beyond our existing terms and will charged [sic] accordingly...

(Doc. #22 Ex. B-P to Ex. A.)

Samuel filed a complaint asserting a claim for breach of contract and alternatively, quantum meruit in connection with Sierra's failure to pay Samuel in full for goods accepted. (Doc. #1 and Doc. #5.) Samuel has filed a motion for summary judgment asserting that it is owed $445,990.76 for the unpaid goods sold to Sierra, in addition to finance charges at a rate of 1.5 % per month on the unpaid balance under each invoice commencing thirty (30) days after the respective dates thereof, together with the costs of collection, including reasonable attorney's fees. (Doc. #20 12, 15-16.) Sierra argues that summary judgment should be denied for the following reasons: (1) Neisingh did not have authority to bind Sierra to any agreements or credit lines applied for through Samuel (Opp. to Mot. for Summ. J. (Doc. #23) 3-4)[4]; (2) Samuel failed to perform to contract specifications and Sierra suffered severe economic hardship as a result of Samuel's breach of contract in failing to timely deliver (*Id.* at 5-6); (3) factual issues remain regarding the court-appointed receiver (*Id.* at 4-8); and (4) the interest sought by Samuel is invalid and should be disregarded due to the adhesive nature of the contract (*Id.* at 8-9).

## II.  LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate

---

[4] Reference is to the pages of the document in the court docket and not Sierra's page references.

3

if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.*

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on

which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(citation omitted). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

### III. DISCUSSION

Samuel asserts a cause of action for breach of contract for goods sold and delivered (Doc. #5 19-21), and alternatively, a cause of action for quantum meruit. (*Id*. at 21-22.) As damages for the breach of contract action, Samuel seeks to recover the unpaid sum of $445,990.76, plus (a) finance charges at the rate of 1.5 % per month on the overdue amount

under each of the invoices commencing thirty (30) days after the respective dates thereof, and (b) all costs of collection, including reasonable attorney's fees. (Doc. #20 12, 15-16.) Alternatively, Plaintiff seeks to recover $445,990.76 plus statutory interest and costs in connection with the quantum meruit claim. (*Id.* at 14-16.)

### A. BREACH OF CONTRACT CLAIM

In order to satisfy its burden under the summary judgment standard for breach of contract, Samuel must demonstrate the absence of any genuine issue of material fact. To establish a cause of action for breach of contract, a plaintiff must prove (1) that there was a valid contract, (2) that the plaintiff performed as specified by the contract, (3) that the defendant failed to perform as specified by the contract, and (4) that the plaintiff suffered an economic loss as a result of the defendant's breach of contract. *See CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (stating elements)(citation omitted); *see also Rubacky v. Restifo*, No. 2-05-cv-00465-RCJ-(LRL), 2006 WL 2039974, at 3 (D.Nev. 2006)(citing *Stewart v. Life Ins. Co. of North America*, 388 F.Supp.2d 1138 (E.D. Cal. 2005)).

#### 1. Validity

Samuel claims that the writings, including the terms of the credit application, purchase orders, invoices and sales agreement, and the conduct of the parties, including the delivery and acceptance without objection of the goods, constitute valid agreements pursuant to N.R.S. § 104.2204(1). (Doc. #20 11.) Sierra does not contest the validity of the agreements per se, but instead argues that Neisingh did not have authority to apply for a line of credit or to enter into any agreements with Samuel on behalf of Sierra. (Doc. #23 3-4.) Samuel contends that Neisingh, as Chief Executive Officer (CEO) of Sierra (Doc. #20 Ex. 2 at 17-22), had at least apparent authority to enter into the subject agreements. (Doc. #24 7-9.)

Preliminarily, Samuel is correct that under Nevada's version of the Uniform Commercial Code, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such conduct." N.R.S. §

104.2204(1). Samuel met its initial burden by producing evidence that it entered into agreements with Sierra for the sale of goods. (Doc. #22, Ex. A-C.)

Sierra contends that a triable issue of material fact exists as to whether Neisingh had authority to enter into the agreements with Samuel. "It is essential that an agent have actual authority, express or implied; however, his authority can be apparent or ostensible and still bind the principal. Apparent authority can be defined as 'that authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence.'" *Myers v. Jones*, 99 Nev. 91, 93 (Nev. 1983) (citations omitted).

Sierra's argument is not well taken. Sierra did not submit evidence demonstrating that Neisingh was without authority to enter into agreements with Samuel. Instead, the evidence before the court indicates that Neisingh, as CEO and one of the founders of Sierra, had actual or at least apparent authority to enter into the agreements. (Doc. #20 Ex. 2 at 11:2-7, 17:8-10, 18:17-22.)

The party opposing summary judgment may not rest upon mere allegations or denials in the pleadings, but instead must present admissible evidence showing a genuine issue for trial. Fed.R.Civ.P. 56(e)(2); *Brinson v. Linda Rose Joint Venture*, 53 F3d 1044, 1049 (9th Cir. 1995). Simply arguing that Neisingh lacked authority to enter into the agreements is not sufficient to overcome summary judgment. Moreover, the Ninth Circuit has held that it is not proper for a party to oppose a motion for summary judgment on grounds that are being asserted for the first time in the response to a summary judgment motion. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006)(citation omitted). "'Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.'" *Id*. Sierra did not raise Neisingh's lack of authority to enter into agreements as an affirmative defense in its answer or in response to Samuel's request for admissions or interrogatories. (Doc. #8, Doc. #20 Ex. 5-8.) Sierra's effort to raise this issue for the first time

1  in its opposition to Samuel's motion for summary judgment, unsupported by any evidence, is
2  improper.
3        Since Sierra failed to present evidence to the court demonstrating that Neisingh did not
4  have authority to enter into agreements with Samuel, it has failed to raise a genuine issue of
5  material fact with respect to the validity of the agreements.
6        **2.  Samuel's Performance**
7        Sierra argues that Samuel failed to perform to contract specifications by failing to deliver
8  goods in a timely manner pursuant to the purchase orders on several occasions. (Doc. #23 4-
9  5.) Sierra relies on a March 31, 2010 letter from Rye to Frere and corresponding emails as well
10 as a May 7, 2008 email from Jane Rousculp to Sierra to support this argument. (*Id*., Ex. 2.)
11 Sierra also argues that it suffered economic hardship as a result of Samuel's breach of contract
12 in failing to timely deliver the goods. (Doc. #23 5-6, Ex. 3.) Samuel objects to the reliance on
13 these exhibits to defeat summary judgment as they are not properly authenticated. (Doc. #24
14 5-7.) Samuel further contends that the alleged delay took place with respect to contracts that
15 are not at issue in this matter. (*Id*.)
16       In order to properly support an opposition to a motion for summary judgment,
17 documentary evidence must be authenticated. *See Hal Roach Studios, Inc. v. Richard Feiner*
18 *and Co., Inc.*, 896 F.2d 1542, 1550-51 (9th Cir. 1990); *accord Canada v. Blain's Helicopters,*
19 *Inc.*, 831 F.2d 920, 925 (9th Cir. 1987). "To be considered by the court, 'documents must be
20 authenticated by and attached to an affidavit that meets the requirements of [Rule 56(e)] and
21 the affiant must be a person through whom the exhibits could be admitted into evidence.'" *Hal*
22 *Roach Studios*, 896 F.2d at 1550-51 (citations omitted). Therefore, Sierra may not rely upon
23 the unauthenticated documents (Doc. #23 Ex. 1-5) to defeat Samuel's motion for summary
24 judgment.
25       It is undisputed that the agreements that are the subject of this action span the period
26 of time between August 2008 and December 2008. (Doc. #22 Ex. A 3-19, Ex. B-P.) Even if
27 the court were to consider the unauthenticated documents submitted by Sierra, they do not
28

provide support for Sierra's claim that it has raised a genuine issue of material fact as to Samuel's performance. The documents submitted by Sierra show that the alleged delay in delivery of goods (Pre-Claim Materials) took place in April 2008 (Doc. #23 Ex. 1-2), months before the agreements that are the subject of this action came into existence. Therefore, Sierra has not shown that Samuel failed to perform with respect to the contracts at issue.

Moreover, under Nevada's version of the Uniform Commercial Code, "[t]he buyer on notifying the seller of his or her intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due *under the same contract.*" N.R.S. § 104.2717 (emphasis added). According to clear language of this provision, the offset must be sought with respect to the same contract under which the price in question is claimed to have been earned. In *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946 (9th Cir. 2006) (applying and interpreting Arizona Commercial Code Section § 42-2717, a codification of § 2-717 of the Uniform Commercial Code, which are both identical to N.R.S. § 104.2717), the Ninth Circuit stated that "[a] plain reading of the statute indicates that a party may not set-off a contractual claim against a debt on a separate contract." *AmerisourceBergen*, 465 F.3d at 950 (citing *ITV Direct, Inc. v. Healthy Solutions, LLC*, 379 F.Supp.2d 130, 133 (D. Mass. 2005) ("Section 2-717 is not a general setoff provision permitting a buyer of goods to adjust its continuing contract obligations according to the equities perceived by the buyer.")).

To avoid summary judgment and to invoke the offset provision of N.R.S. § 104.2717, Sierra was required to submit proof of Samuel's breach of the underlying sales agreements. Sierra did not submit evidence that Samuel breached an agreement that is at issue. Therefore, Sierra has failed to raise a genuine issue of material fact as to Samuel's performance.

### 3.  **Sierra's Failure to Perform**

Other than the amount of interest Samuel claims it is owed, Sierra does not dispute that it failed to pay Samuel the amount it was owed under the agreements. Instead, Samuel argues that factual issues remain as to: (1) whether Neisingh had authority to legally bind Sierra to agreements with Samuel (Doc. # 23 3-4); (2) whether Samuel failed to perform its

9

contract specifications and the economic hardship Sierra suffered as a result (*Id.* at 4-6); (3) whether the court-appointed receiver acted wrongfully (*Id.* at 6-8); and (4) whether the interest sought by Samuel should be disregarded due to the adhesive nature of the agreements (*Id.* at 8-9). These arguments are addressed at III.A.1 (*supra*), III.A.2 (*supra*), III.B (*infra*), and III.A.4 (*infra*), respectively.

### 4.    Samuel's Economic Loss as a Result of Sierra's Breach

Samuel claims that it has suffered the loss of $445,990.76 plus (a) finance charges at the rate of 1.5% per month on the overdue amount under each of the invoices commencing thirty (30) days after the respective dates thereof, and (b) all costs of collection, including reasonable attorney's fees, as a result of Sierra's failure to pay Samuel in full for goods accepted. (Doc. #20 12, 15-16; Doc. #22 ¶¶ 3-5, 15-16, Ex. B-P to Ex. A.)

Samuel has presented sufficient evidence to meet its burden of proof with respect to this element. (Doc. #22, Ex. B-P to Ex. A thereto.) Sierra failed to present evidence to dispute the amount or fact that Samuel is owed the $445,990.76, plus costs of collection, including reasonable attorney's fees. In fact, Frere admits that when he heard Samuel was not being paid, he insisted to the receiver, Rye, that Samuel be paid. (Doc. #23 Ex. 6 at ¶ 5.)

Sierra does argue that a factual dispute exists as to whether any interest sought by Samuel is unconscionable and should be disregarded due to the adhesive nature of the contract. (Doc. #23 8-9.) Specifically, Sierra argues that the provision in the credit application providing that the interest rate may be "such other rate as may be set by you from time to time" is an adhesion contract, and unenforceable. (*Id.* at 9.)

Sierra has not presented evidence to create a genuine issue of material fact as to Samuel's economic loss as a result of Sierra's breach. Sierra does not dispute that it knew of the finance charge terms set forth in the credit application (Doc. #22 Ex. A to Ex. A) and the sales agreements (*Id.* at Ex. B-P to Ex. A). Sierra does not assert that it made any objection to these terms throughout its business relationship or dealings with Samuel. Notwithstanding,

Sierra asserts that the finance charge provision constitutes an unconscionable adhesion contract.

Under Nevada law, adhesion contracts are not procedurally unconscionable per se. *Mallin v. Farmers Ins. Exchange*, 108 Nev. 788, 808 (Nev. 1992). To determine whether an agreement is procedurally unconscionable, a court must evaluate how the parties negotiated the contract and the circumstances of the parties at that time. *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1106 (9th Cir. 2003)(interpreting Nevada law). Courts must consider (1) whether the contract is oppressive and (2) whether the contract contains surprise. *Id*. "An adhesion contract is 'a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain.'" *Kindred v. Second Judicial Dist. Ct. ex rel. County of Washoe*, 116 Nev. 405, 411 (Nev. 2000)(quoting *Obstetrics and Gynecologists v. Pepper*, 101 Nev. 105, 107 (Nev. 1985)). "The distinctive feature of an adhesion contract is that the weaker party has no choice as to its terms." *Obstetrics*, 116 Nev. at 107 (citing *Wheeler v. St. Joseph Hospital*, 63 Cal.App.3d 345 (Cal. 1976)). Thus, a court can find that a contract is oppressive when there is an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. *Circuit City*, 335 F.3d at 1106. For example, in *Burch v. Second Judicial District Court of State ex rel. County of Washoe*, 118 Nev. 438 (Nev. 2002), the court found that a one-page application form accompanied by a thirty-one-page home buyers warranty booklet containing an arbitration provision was an adhesion contract. *Id*. at 440, 442. The Nevada Supreme Court pointed out that the application was a pre-printed, standardized contract form, the weaker party did not have an opportunity to negotiate the terms with the other party, and was required to "take it or leave it." *Id*. at 443-44. The court also found that the contract was oppressive because the home buyers were not sophisticated consumers and the disclaimers in the contract were not conspicuous. *Id*.

Here, Sierra has offered no evidence to demonstrate that the finance charge provision is oppressive. Sierra appears to have had ample time to review the credit application as well

11

as the terms of the sales agreement included with each invoice and decide whether or not to enter into the contract. There is no evidence before the court that Sierra, a business and not an unsophisticated consumer, was in a position of unequal bargaining power as compared to Samuel. Nothing indicates that Sierra was presented with these terms on a "take it or leave it" basis. Therefore, there is no evidence before the court indicating that the existence of an oppressive agreement.

The other factor courts look to in determining whether a contract is procedurally unconscionable is surprise, defined as the extent to which the supposedly agreed-upon terms of the bargain are hidden in the printed form drafted by the party seeking to enforce the disputed terms. *Circuit City*, 335 F.3d at 1106. Here, the language regarding the finance charge was conspicuous. It is contained in each and every invoice sent by Samuel to Sierra and set forth under the heading that reads in capital letters; "FINANCE CHARGE/PENALTIES." (Doc. #22 Ex. A and Ex. B-P thereto.) There is no evidence that the element of surprise is present here.

Because there is no evidence of oppression or surprise, the court finds that the contract is not procedurally unconscionable. Therefore, Sierra has failed to raise a genuine issue of material fact as to Samuel's economic loss as a result of Sierra's breach.

**B.   RECEIVER**

Lastly, Sierra argues that summary judgment should be denied because factual issues remain regarding alleged wrongdoing and lack of professional oversight on the part of the appointed receiver, Rye. (DOCoc. # 23 6-8.) Sierra contends that Rye should be responsible for late fees and interest on any payments owed to Samuel. (*Id*. at 8.)

Sierra's argument regarding the role of the receiver is not well taken. Rye is not a party to this action, and Samuel correctly points out that the time to add Rye as a party has long since expired. (Doc. #19.) Samuel also correctly points out that whether Sierra wishes to pursue Rye for contribution is not related to the issues currently before the court. A "material" fact is that which, under the applicable substantive law, may affect the outcome of the case. *See Anderson*

12

1  *v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment…It is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248. Facts that are unnecessary to the decision at trial are not "material." *Id.* Sierra has failed to raise a genuine issue as to any *material fact* in connection with Samuel's breach of contract claim.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Samuel's Motion for Summary Judgment (Doc. # 20-22) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties are to contact the court to schedule a hearing regarding the precise amount of damages.

DATED: October 19, 2010.

_____
UNITED STATES MAGISTRATE JUDGE